**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 25-mj-108** |
| **v.** | |
| **SIDNEY ROGERS,** | |
| **Defendant.** | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(d)(1)(A)(iii) (Defendant on probation or parole) and 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm), as the Defendant, Sidney Rogers, is charged with violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of Ammunition) and 22 D.C. Code § 4503 (Unlawful Possession of a Firearm (Prior Conviction)). The evidence presented to the court shows that the Defendant poses a demonstrated danger to the public if he were released and is a flight risk if he is released.

Defendant Rogers's criminal history is remarkable for its repeated firearms offenses, flagrant disregard for the law and the community, and repeated failures to comply with court-ordered conditions. At the time of the instant offense, the Defendant was on probation for Unlawful Possession of a Firearm (Prior Conviction) and was not in compliance with his release conditions. He failed to charge his GPS monitor, he failed to report for drug testing, and he failed to report to mental health services. The underlying facts of multiple of his prior convictions for gun possession involve shootings. In addition, much like the instance offense, the Defendant's 2023 conviction for firearm possession involved flight from the police in a motor vehicle. Given this history and considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions

1

or combination of conditions short of detention that can ensure the safety of our community or guarantee Defendant Rogers's appearance in Court.

For the following reasons, the Court should order Defendant Rogers detained pending trial.

## **BACKGROUND**

On Monday June 4, 2025, at approximately 5:56 PM, Officer Brian Lafranchise of the Metropolitan Police Department (MPD) Seventh District was conducting patrol in PSA 701, wearing full MPD uniform in a fully marked cruiser.  At approximately 5:56 PM, Officer Lafranchise was sitting in his police cruiser on Morris Rd SE at the stop light at the intersection of Morris Rd SE and Martin Luther King Jr Ave SE. While waiting for the light to turn green, Officer Lafranchise witnessed Defendant Rogers operating a black and neon yellow all-terrain vehicle (an "ATV") traveling northeast bound across the intersection of Morris Rd SE and Martin Luther King Jr Ave SE, perpendicular to Officer Lafranchise's marked police cruiser. When the light turned green for  Officer Lafranchise, Officer Lafranchise turned right onto Martin Luther King Jr Ave SE and could see Defendant Rogers still operating the ATV approximately one block ahead of him.  At that point, the ATV was still traveling northeast bound, but Defendant Rogers soon thereafter pulled over and parallel parked in between two cars 2100 Martin Luther King Jr Ave SE.  It appeared to Officer Lafranchise that Defendant Rogers then turned off the vehicle.  Officer Lafranchise then also pulled his police cruiser next to Defendant Rogers and exited the police cruiser with the intent to arrest Defendant Rogers for violation of 50 D.C. Code § 2201.04b which prohibits, in relevant part, the operation and parking of ATVs in public spaces in the District of Columbia.

As Officer Lafranchise exited the police cruiser and came around the front of the cruiser, Defendant Rogers frantically turned back on the ATV and tried to move it forward.  Though

Officer Lafranchise was able to grab Defendant Rogers's left arm for a moment, Defendant Rogers was able to turn the throttle on the ATV and rapidly accelerate forward, colliding immediately into a parked vehicle in front of him, causing damage to that vehicle's rear passenger side bumper.



*Image of Defendant Rogers as Officer Rounded Police Cruiser*



***Image of Defendant Rogers on ATV Crashed into Parked Vehicle***

Defendant Rogers then fled on foot, running across the street away from Officer Lafranchise.  Officer Lafranchise then noticed a tan grip of a handgun protruding from the left side of Defendant Rogers' body tucked into Defendant Rogers's shorts. Defendant Rogers continued to flee and as he did so, he tossed off his backpack.



*Image of Defendant Rogers Fleeing Across the Street*



*Image of Defendant Rogers with Firearm in Waistband*



***Closer Image of Defendant Rogers with Firearm in Waistband***

Defendant Rogers then attempted to jump headfirst into the open passenger side window of another vehicle, but failed to do so and instead cause a dent to be created on the front passenger side door. Defendant Rogers then tried to jump on the hood of the vehicle.



*Image of Defendant Rogers Against Second Vehicle*

Officer Lafranchise eventually was able to grab Defendant Rogers and attempted to place him under arrest. Defendant Rogers began to resist arrest. Officer Butler then arrived and assisted Officer Lafranchise in handcuffing Defendant Rogers. Officer Djunga also arrived and pulled the firearm from Defendant Rogers's waistband.



*Image of Firearm in Defendant Rogers' Waistband*



***Image of Firearm Removed from Defendant Rogers' Waistband***

Officer Ogbourne found a broken black Glock 17 magazine that appeared to have a capacity of seventeen (17) rounds along with sixteen (16) 9mm Luger rounds across the street of 2100 Martin Luther King Jr Ave SE by the bus stop at the northwest corner of the intersection of Martin Luther King Jr Ave SE and W St SE, which was directly in Defendant Rogers' flight path. The damage to the magazine was consistent with having been dropped.



*Image of Broken Magazine in Defendant Rogers' Flight Path*

The firearm was a black and tan P80 with serial number AARP414 on the slide. The firearm had one 9mm Luger round in the chamber.



***Image of Firearm Recovered from Defendant Rogers with Round from Chamber***

Defendant Rogers's identity was confirmed, and it was confirmed that Defendant Rogers did not have a license to carry a handgun in the District of Columbia. A criminal history check showed that Defendant Rogers was previously convicted in 2023 in D.C. Superior Court Case number 2022 CF2 003585 of: Unlawful Possession of a Firearm (Prior Conviction) and sentenced to 18 months of incarceration with 4 months suspended, followed by a period of probation. Accordingly, Defendant Rogers would have been aware that he was previously convicted of a crime punishable by a term of imprisonment exceeding one year at the time he was possessing the firearm and ammunition.

Following his arrest, Defendant Rogers was presented on gun charges in Superior Court (Case No. 2025 CF2 006288, which will be dismissed in light of this matter). The magistrate judge found probable cause in that case, and Rogers was held without bond based on the Defendant's

prior gun convictions and aggravating factors in the instant case.  Trial is set in that matter for October 2, 2025.

On June 24, 2025, a the Honorable Zia M. Faruqui found probable cause to issue a Criminal Complaint for violations of 18 U.S.C. § 922(g)(1) (Unlawful Possession of Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year), 22 D.C. Code. § 4503, (Unlawful Possession of a Firearm (Prior Conviction)).

## <u>LEGAL AUTHORITY & ARGUMENT</u>

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial.  18 U.S.C. § 3142(e).  When the basis for pretrial detention is the defendant's danger to the community, the government is required to demonstrate the appropriateness of detention by clear and convincing evidence, *United States v. Sabol*, 534 F. Supp. 3d 58, 65 (D.D.C. 2021), whereas a determination that an individual is a flight risk must be supported by a preponderance of the evidence.  *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019) (citing *United States v. Bortis*, 785 F.2d 327, 328-29 (D.C. 1986)). [1]

In making the pretrial detention determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f).  Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer.  *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).  Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."

---

[1] Not relevant here, the Act also provides a rebuttable presumption for certain crimes that no conditions or combinations of conditions will assure the safety of the community.  18 U.S.C. § 3142(e).

*United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device. *See Smith*, 79 F.3d at 1210 and *Williams*, 798 F. Supp. at 36.

1.      **The United States' Bases for Detention**

The United States seeks detention pursuant to §§ 3142(d)(1)(A)(iii) (Defendant on probation or parole) and 3142(f)(1)(E) (felony involving possession of a firearm), because the defendant is charged with committing a firearm while he was on supervision in D.C. Superior Court cases, 2022 CF2 003585.

As the court is aware, 18 U.S.C. § 3142(g) enumerates four factors that the court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. Each of these factors weighs in favor of pretrial detention in this case. *See* 18 U.S.C. § 3142(g).

2.      **The Bail Reform Act Factors All Favor Detention Given Rogers's Risk of Flight and Dangerousness to the Community**

When determining whether any condition or combinations of conditions will assure Defendant Rogers's appearance and the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. *See* 18 U.S.C. § 3142(g). As set out below, Defendant Rogers committed the instant offenses while on probation for a very similar gun offense in 2022 CF2

003585.  Moreover, there is significant evidence that his dangerous and illegal actions on June 4, 2025, leading to the serious charges in this case, are reflective of a much larger and longer pattern of not only gun possession, but also use.  Given these facts, there is clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community.  Further, while Defendant Rogers's dangerousness to the community is the United States' primary basis for pre-trial detention, a preponderance of the evidence also supports a finding that no condition or combination of conditions will reasonably assure Defendant Rogers's appearance as required.

### A.    The Nature and Circumstances of this Offense Merits Detention.

The nature and circumstances of the charged offenses weigh heavily in favor of pretrial detention in this case.  The Bail Reform Act explicitly identifies offenses involving firearms or a "controlled substance" as serious in nature.  *See* 18 U.S.C. § 3142(g).  Defendant Rogers is charged with illegal possession of a loaded firearm where, upon seeing police presence, he revved his ATV and drove it into the back bumper of a bystander's car, all while having a firearm with one round in the chamber tucked in his waistband.  During his flight, the Defendant crashed into not one, but two, cars and dropped a loaded magazine in a public street, sending bullets rolling on Martin Luther King, Jr. Avenue SE.  When police ultimately were able to stop him, the Defendant began yelling for bystanders to come closer and intervene in the situation, making the incident all the more dangerous.  Further supporting the seriousness of the offenses charged, if convicted at trial, Defendant Rogers faces a lengthy term of incarceration, including but not limited to a mandatory minimum term of one year of imprisonment for the D.C. Code offense, also considered in connection to the guidelines ranges under a conviction for 922(g)(1).

### B.    The Weight of the Evidence Against the Defendant is Formidable.

The second factor to be considered, the weight of the evidence, favors detention.[2]  The United States's case against Defendant Rogers is considerable: the firearm on Rogers's person is visible on multiple officers' body worn camera, and the Defendant's flight and crash of the ATV are also captured.  As this Court has noted, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).  Chief Judge Howell's warning in *Blackson* is particularly prescient given Defendant Rogers's past practice of fleeing law enforcement in motor vehicles while carrying a firearm.  Accordingly, the strength of the evidence against Defendant Rogers also weighs in favor of detention.

### C.    Defendant Rogers's History and Characteristics Merit Detention.

This third factor—the history and characteristics of the defendant—heavily favors detention.  Defendant Rogers committed the serious offenses charged in this case while in violation

---

[2] While some judges in this Court have indicated that this factor should be given less weight, in *Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors."  2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate."  *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

of the terms of his supervised probation for yet another firearms offense in 2022 CF2 003585. The fact pattern in that case is also eerily similar to the instant matter. According to the agreed upon proffer of facts, when police tried to make contact with the defendant in the 2022 matter, "The defendant got into his vehicle and attempted to drive away, but instead drove into a cement barrier. Despite the damage to his vehicle, the defendant continued to drive away. The defendant threw his satchel out of the window as he was driving." *See* Exhibit 1 (2022 CF2 03585 Proffer of Facts). Inside of that satchel was a loaded firearm. In addition, in 2012 CF2 020947, Defendant Rogers admitted to discharging the firearm from outside a building at a complainant who was inside a building window, though Defendant Rogers maintained that he acted in self-defense. *See* Exhibit 2 (2012 CF2 020947 Proffer of Facts). Finally, in 2011 CF2 005838, though Defendant Rogers was only convicted of Carrying a Pistol Without a License, he was arrested in connection with use of a gun that was used in a homicide. According to the arrest warrant affidavit, Rogers himself admitted to firing a gun at another person because he was "angry." *See* Exhibit 3 (2011 CF2 005838 Arrest Warrant)[3]

The fact that Defendant Rogers possessed a loaded firearm after three prior firearm convictions and while on probation is astounding and concerning.

### D.    The Danger to the Community Created by Defendant Rogers's Release Weighs in Favor of Detention

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno,*

---

[3] The government was not able to locate a docketed proffer of facts in connection with the plea agreement in the 2011 case.

481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Defendant Rogers poses an obvious and articulable threat to the community. As noted above, the Defendant was on probation for an almost identical firearm offense. That he would defy a court's order and carry a firearm while doing so demonstrates just how dangerous he is to the community. The Defendant, however, defied that order and was carrying a firearm and he was willing to drive an ATV into a bystander's car and then run into traffic in order to evade police. This shows an utter disregard for the safety of the bystanders around him. This evasion of arrest coupled with the Defendant's attempt to evade arrest in connection with his 2022 case, establishes the beginning of patter of resisting arrest with MPD. The commonality amongst these encounters raises concerns about what could happen if Defendant Rogers once again fails to comply with court-ordered conditions of release and officers are required to execute a warrant for his arrest. This factor, along with the other three factors, weighs in favor of the Defendant's detention without bond pending trial to ensure the safety of the community.

## <u>CONCLUSION</u>

Because all four of the Bail Reform Act factors weigh heavily in favor of pretrial detention, the United States respectfully requests that the Court issue an Order granting the United States' motion that Defendant Rogers be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    /s/ Caelainn Carney
CAELAINN CARNEY
NY Bar No. 5751672
Special Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
202-714-6433
Caelainn.carney@usdoj.gov